IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Fazail Azizan,

                Plaintiff,

                          Case No. 1:25-cv-1112-MLB

v.

Alexander Manning and Samuel
Saeid Johnson,

                Defendants.

_____/

## OPINION & ORDER

On July 13, 2023, Plaintiff filed a petition for a temporary protective order ("TPO") against Mr. Abbas Hajianbarzi in the Superior Court of Fulton County. (Dkt. 1 ¶ 6.) On August 24, 2023, Defendant Manning—a Superior Court judge—held a hearing on Plaintiff's petition; dismissed it on the merits; granted a motion for attorneys' fees filed by Mr. Hajianbarzi through his attorney (Defendant Johnson); and ordered Plaintiff to pay $3,000 in fees. (Dkts. 1 ¶¶ 3, 8, 10–11; 1-3 at 6–7.) Mr. Hajianbarzi—again through Defendant Johnson—"attempted to enforce the $3,000 attorney's fee award" by serving Plaintiff with a

deposition notice and moving to hold Plaintiff in contempt for failure to pay the fee. (Dkts. 1-1 at 3; 1-2; 1-3 at 2–5.) Nothing suggests these enforcement efforts resulted in any payment, deposition, or finding of contempt.

Unsatisfied with the Superior Court, Plaintiff filed an application for discretionary appeal in the Georgia Court of Appeals. (Dkt. 1 ¶ 11.) Mr. Hajianbarzi—again through Defendant Johnson—opposed, but the Georgia Court of Appeals granted the application and vacated Defendant Manning's orders. (Dkts. 1-1 at 2; 1-5; 1-6.) The court concluded a Georgia statute required Defendant Manning to hold a hearing on Plaintiff's TPO petition within 30 days after the petition was filed, Defendant Manning did not do so, this automatically "resulted in a dismissal of the petition" without prejudice, and Defendant Manning thus lacked "authority" to dismiss Plaintiff's petition on the merits. (Dkt. 1-6 at 3–7.) The court also vacated Defendant Manning's order awarding attorneys' fees, because the order "set forth neither the statutory basis for the . . . award nor any findings necessary to support it." (Dkt. 1-6 at 9.)

Plaintiff then sued Defendants in this Court. (Dkt 1.) His pro se complaint asserts federal claims for cruel and unusual punishment under the Eighth Amendment, violations of the Due Process Clause, violations of the Equal Protection Clause, First Amendment retaliation, and civil conspiracy. Plaintiff also asserts state law claims for defamation, false light invasion of privacy, and abuse of process. The gist of Plaintiff's complaint is that Defendants conspired to dismiss his TPO petition on the merits and to make him pay attorneys' fees, even though they knew his petition had already been dismissed by operation of law. Defendant Johnson now moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(i). (Dkt. 59.) Defendant Manning also moves to dismiss for lack of service. (Dkt. 71.) The Court grants both motions.[1]

---

[1] Several other motions are also pending on the docket. Plaintiff moves to file a sur-reply in opposition to Defendant Manning's motion to dismiss. (Dkt. 79.) The Court denies this motion because Plaintiff hasn't shown a sur-reply is warranted, especially given the Court's prior warning that it would "not permit sur-replies as a matter of course and the parties should not expect to file sur-replies in the future." (Dkt. 64.) Even considering the sur-reply, it would not change the outcome of this Order. Plaintiff next moves for reconsideration of the Court's April 15, 2025 Order (Dkt. 56) declining to enter default against Defendant Manning. (Dkt. 73.) The Court denies this motion as untimely because Plaintiff filed it on May 16, 2025, more than 28 days after the Order he seeks to challenge. *See* LR 7.2(E), NDGa ("Whenever a party . . . believes

## I.   Defendant Johnson's Motion[2]

### A.   Timeliness

Defendant Johnson moves to dismiss for failure to state a claim under Rule 12(i).  (Dkt. 59.)  Plaintiff argues this is functionally a motion

_____

it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the clerk of court within twenty-eight (28) days after entry of the order or judgment."); *Manigault v. Colvin*, 2013 WL 12157839, at *1 (N.D. Ga. May 8, 2013) (denying motion for reconsideration as untimely under Local Rule 7.2(E)); *Roberts v. Primestart Fund I Trs, Inc.*, 2018 WL 1230592, at *1 (N.D. Ga. Jan. 31, 2018) (same).  The motion also fails on the merits because Plaintiff never effectuated valid service of process on Defendant Manning (for reasons explained later in this Order), meaning Defendant Manning was not required to respond to Plaintiff's complaint and thus was not in default for failing to do so.  Moreover, the Court stands by its analysis in the April 15 Order, which found default was unwarranted even assuming "Defendant Manning missed the deadline to respond to Plaintiff's complaint."  (Dkt. 56 at 2.)  Separately, Plaintiff moves to file a "sur-reply" in support of his motion for reconsideration.  (Dkt. 80.)  The Court grants this motion because, as best the Court can tell, the document Plaintiff seeks to file is a standard reply—not a sur-reply—and Plaintiff filed it within the time allotted under the Local Rules.  Finally, the Court previously ordered Plaintiff to file a 3-page supplemental brief and Plaintiff now moves to exceed that page limit.  (Dkt. 84.)  The Court grants this motion because the request is reasonable, Plaintiff's supplemental brief is a manageable size (8 pages), and the extra pages have sharpened the issues for resolution.

[2] Plaintiff's brief in opposition to Defendant Johnson's motion exceeds the 25-page limit set forth in Local Rule 7.1(D).  The Court considers only the first 25 pages of Plaintiff's brief.  *See* LR 7.1(F), NDGa (court "may decline to consider any motion or brief that fails to conform" to the 25-page limit); *Coward v. Forestar Realty, Inc.*, 2019 WL 12536138, at *1 (N.D. Ga. June

to dismiss under Rule 12(b)(6), such motions must be filed *pre*-answer, Defendant Johnson filed his motion *post*-answer, and thus the motion is untimely. (Dkt. 74 at 1–3.) The Court disagrees.

Rule 12(i) says, "[i]f a party so moves, any defense listed in Rule 12(b)(1)-(7)—whether made in a pleading or by motion— . . . must be heard and decided before trial unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i). According to several courts, this means a defendant may file a post-answer motion to dismiss for failure to state a claim (a "defense listed in Rule 12(b)(1)-(7)") if defendant previously included that defense in his answer ("made [it] in a pleading"). *See Hines v. Nazaire*, 2019 WL 3010284, at *1 (11th Cir. Mar. 27, 2019) ("[C]ourts have entertained affirmative defenses included in a motion to dismiss when the defense was previously included in the answer, sometimes doing so on the basis that the motion to dismiss becomes a preliminary hearing under Rule 12(i) of the Federal Rules of Civil Procedure."); *Maldonado v. Johnson*, 2023 WL 11840632, at *2 (N.D. Fla. Dec. 7, 2023) ("a defendant who has included a Rule 12(b) defense in his answer has

---

28, 2019) ("[T]he Court exercises its discretion to only consider the first twenty-five pages of Defendants' response brief.").

5

preserved the ability to assert the defense" in "a Rule 12(i) motion");
*Green v. Henry Cnty. Comm'n*, 2020 WL 974388, at *3 n.4 (M.D. Ala. Feb.
28, 2020) (Brasher, J.) ("The Court could . . . proceed to consider the
Commission's [Rule 12(b)(6)] arguments under Rule 12(i) because the
Commission included the basis for its Rule 12(b)(6) motion in its
answer.").[3]

That is exactly what Defendant Johnson did here.  He filed an
answer asserting as his "first defense" that "Plaintiff's Complaint fails
. . . to state a claim against Defendant upon which relief may be granted."
(Dkt. 5 at 1.)  He then filed a Rule 12(i) motion seeking an adjudication
of that defense.  This is permitted under the authorities cited above.  So
the Court declines to strike Defendant Johnson's motion as untimely.

---

[3] *See also* 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.
Civ. § 1361 (3d ed. Nov. 2025 Update) ("[F]ederal courts have allowed
untimely [Rule 12(b)] motions if the defense has been previously included
in the answer.  In this context, the motion becomes tantamount to a
motion for a pretrial hearing on the defense under Rule 12(i).").  The
Court acknowledges *Hines* is unpublished and nonbinding.  The Court
cites it and other unpublished cases as instructive, nonetheless.  *See
Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir.
2018) ("Unpublished cases do not constitute binding authority and may
be relied on only to the extent they are persuasive.").

## B.    Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## C.    Plaintiff's Federal Claims

Plaintiff's complaint asserts 42 U.S.C. § 1983 claims for civil conspiracy and violations of the Eighth Amendment, the Due Process Clause, the Equal Protection Clause, and the First Amendment. Defendant Johnson argues the Court should dismiss these claims (to the extent they are asserted against him) because he did not act "under color of state law" when he allegedly violated Plaintiff's rights in the underlying TPO case.  (Dkt. 59-1 at 7–10.)  The Court agrees.

7

"In order to prevail on a civil rights action under § 1983, a plaintiff must show [he] was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id.* In other words, the person must act "pursuant to the power he[] possessed by state authority" or, loosely speaking, "within the scope of his employment as a[n] officer of the governmental entity by which he is employed." *Id.*; *Jude v. Morrison*, 534 F. Supp. 2d 1365, 1371 n.7 (N.D. Ga. 2008).

Here, Defendant Johnson is both a "personal injury litigation attorney" (a private position) and a part-time Deputy Sheriff for Fulton County (a state position). (Dkt. 1 ¶ 8.) But no one disputes he acted solely as a private attorney—not as a Deputy Sheriff—when he represented Mr. Hajianbarzi in the TPO case. (*See* Dkt. 74 at 5–6, 8, 14 (Plaintiff repeatedly characterizing Defendant Johnson as a "private actor" and "private attorney").) Because he "act[ed] only as a private individual" when he "committed the acts against plaintiff that gave rise to this action," his status as a part-time government employee does not

render him a state actor for the purpose of Plaintiff's claims. *Griffin*, 261 F.3d at 1303; *Hackett v. Fulton Cnty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1355 (N.D. Ga. 2002); *see Christman v. Walsh*, 416 F. App'x 841, 845 (11th Cir. 2011) (although defendant was both a state employee and a private attorney, "he was involved in the [challenged] state court proceedings as a private attorney[] rather than in an official government capacity," and thus was not "acting under color of state law").

Plaintiff counters that Defendant Johnson should nonetheless be deemed a state actor because he conspired with Defendant Manning (a state court judge) to violate Plaintiff's constitutional rights. This could be a viable theory—if it were well-pled—because "private parties who conspire with [a] judge . . . are acting under color of state law and may be held liable under § 1983." *Dykes v. Hosemann*, 743 F.2d 1488, 1499 (11th Cir. 1984); *see Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) ("[I]f properly alleged, the private parties conspiring with the judge were acting under color of state law."). "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding [or agreement] to deny the plaintiff his [constitutional] rights." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990); *see Pittman v.*

*State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016) ("The linchpin for conspiracy is agreement."). "Though circumstantial evidence can help prove a section 1983 conspiracy, the complaint must make particularized allegations that a conspiracy existed." *Ghee v. Comcast Cable Commc'ns, LLC*, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023); *see Cox v. Mills*, 465 F. App'x 885, 887 (11th Cir. 2012) ("[P]laintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the private person and the state actor."). "[C]onclusory, vague, and general allegations of conspiracy" are insufficient. *Mickens v. Tenth Jud. Cir.*, 181 F. App'x 865, 876 (11th Cir. 2006); *see Pittman*, 662 F. App'x at 880.

Plaintiff has not pled a plausible conspiracy under these standards. He faults Defendant Johnson for appearing at a TPO hearing, successfully moving for attorneys' fees after the court ruled for his client on the merits, trying to collect those fees through discovery and motion practice, and opposing Plaintiff's application for discretionary appeal. But "[t]hese normal functions of opposing counsel do not evidence that [he] reached an understanding with [the presiding judge, Defendant Manning] to deprive [Plaintiff] of [his] constitutional rights." *McBrearty*

*v. Koji*, 348 F. App'x 437, 439–40 (11th Cir. 2009) (no conspiracy between attorney and judge where attorney "serv[ed] as opposing counsel in a summary judgment hearing," "oppos[ed] [plaintiff's] request for a rehearing," and "oppos[ed] [plaintiff's] appeal"); *see Knezevich v. Ptomey*, 761 F. App'x 904, 908 (11th Cir. 2019) (defense attorneys' "actions of planning and instigating a litigation strategy [were] normal functions of opposing counsel" and thus did not establish a conspiracy with the judge).[4] This is so even if Defendant Johnson's filings were meritless and Defendant Manning erroneously ruled otherwise. *See Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) ("Obviously, being on the winning side of a lawsuit does not make a defendant a co-conspirator or a joint actor with the judge who presided over the case."); *Gottschalk v. Gottschalk*, 2011 WL 2420020, at *7 (11th Cir. June 16, 2011) (that the judge's rulings and actions during trial were "unreasonabl[e] and

---

[4] *See also Williams v. Brooks Trucking Co., Inc. of Memphis*, 757 F. App'x 790, 795 (11th Cir. 2018) ("The private Defendants' defense of Plaintiff's personal injury action before Judge Rumer represents neither reaching an understanding nor willful participation with Judge Rumer in a conspiracy to subvert Plaintiff's rights."); *Christman*, 416 F. App'x at 843, 845–46 (11th Cir. 2011) (no conspiracy between attorney and judge even though attorney "engaged in ex parte communications with [the judge] and convinced him to enter a criminal contempt order against [plaintiffs]").

unfair[]" did "not establish that he had reached a prior agreement with [counsel] to deprive [plaintiff] of his [constitutional] rights"). A contrary holding would convert every judicial mistake into an illicit conspiracy between the judge and attorney involved.

Plaintiff argues Defendants' conduct in the TPO case—though unremarkable in most cases—was indicative of a conspiracy here because both Defendants knew the case had already been dismissed by operation of law. The Court disagrees. To be sure, the complaint says Defendant Johnson was "fully aware that the court lacked jurisdiction" and Defendant Manning had "full knowledge of her lack of jurisdiction." (Dkt. 1 ¶¶ 10, 19.) But these allegations—and others like them in the complaint—are conclusory, meaning the Court cannot consider them. *See Garcia v. Madison Cnty. Alabama Sheriff's Off.*, 2021 WL 3238813, at *4 n.4 (11th Cir. July 30, 2021) ("[T]he district court must . . . disregard conclusory allegations."). And, even if each Defendant did know the case was dismissed and decided to proceed regardless, Plaintiff has not shown they reached an *agreement* to do so. "Without more, parallel conduct does not suggest conspiracy." *Twombly*, 550 U.S. at 556–57; *see Frasier v. Evans*, 992 F.3d 1003, 1025 (10th Cir. 2021) (noting in a Section 1983

case that "parallel action does not necessarily indicate an agreement to act in concert").

Plaintiff has not plausibly alleged Defendant Johnson acted under color of state law during the events in the TPO case that led to this suit. *See Stevens v. Plumbers & Pipefitters Loc. 219*, 812 F. App'x 815, 819 (11th Cir. 2020) ("Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes."). So the Court dismisses Plaintiff's Section 1983 claims against Defendant Johnson for failure to state a claim.[5]

---

[5] To the extent Defendant Johnson argues he could not have acted under color of state law even if he conspired with Defendant Manning because Defendant Manning enjoys judicial immunity, the Court rejects that argument. (Dkt. 59-1 at 9.) "[T]hough a judge may be immune from suit, private parties who conspire with him act 'under color of state law' for purposes of section 1983." *Novak v. Cobb Cnty. Kennestone Hosp. Auth.*, 74 F.3d 1173, 1177 (11th Cir. 1996); *see Phillips*, 746 F.2d at 785 ("[A] state court judge, although immune from damages under section 1983, when acting in conspiracy with private defendants, can supply the state action nexus required for a section 1983 suit."). To the extent Defendant Johnson argues "Plaintiff has not alleged a proper constitutional injury" because "Plaintiff did not have his liberty or freedoms taken from him," the Court rejects this argument as well. (Dkt. 59-1 at 10.) A constitutional injury is not limited to deprivations of liberty. And Plaintiff alleges he suffered other harms as a result of Defendants' conduct, including "significant financial expenses[] amounting to thousands of dollars." (*See* Dkt. 1 ¶¶ 15–16, 23–24, 33, 34, 39); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("[A]n economic injury qualifies as a concrete injury.").

### D.    Plaintiff's State Claims[6]

### 1.    Defamation and Invasion of Privacy

The complaint asserts state law claims for defamation and false light invasion of privacy, on the theory that "Defendants made false and misleading statements—including misrepresentations of the [state] court's jurisdiction—with the intent to harm Plaintiff's interests and justify the issuance of an unlawful monetary judgment." (Dkt. 1 ¶ 31; *see* Dkt. 74 at 16.)

To state a claim for defamation, plaintiff must identify "a false and defamatory statement concerning the plaintiff." *Am. C.L. Union, Inc. v. Zeh*, 864 S.E.2d 422, 427 (Ga. 2021). To state a claim for false light invasion of privacy, plaintiff must show defendant "depict[ed] the

---

[6] Although the Court has now dismissed Plaintiff's federal claims, the Court elects to exercise supplemental jurisdiction over Plaintiff's remaining state claims because they would likely be time-barred if Plaintiff sought to refile them in a new action. *See Ingram v. Sch. Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 109 (11th Cir. 2006) ("If the state claim has become time-barred . . . then the court should exercise supplemental jurisdiction despite the dismissal of all of the federal claims."); *Beck v. Prupis*, 162 F.3d 1090, 1100 (11th Cir. 1998) ("[D]ismissing state law claims for which the statute of limitations has run will often constitute an abuse of discretion."). Moreover, Plaintiff may yet amend his federal claims, as explained in the conclusion section of this Order.

plaintiff as something or someone which he is not" and that such a depiction "would be highly offensive to a reasonable person." *Doe v. Roe*, 864 S.E.2d 206, 216 (Ga. Ct. App. 2021); *see Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008) ("In order to sustain a false light invasion of privacy claim, a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person.").

Defendant Johnson argues the Court should dismiss Plaintiff's defamation/false light claims for failure to plead these elements. (Dkt. 59-1 at 11.)  The Court agrees.  The complaint includes no well-pled allegations that Defendant Johnson even published the statement about which Plaintiff complains, namely, that the Superior Court had jurisdiction over the TPO case. And, even if Defendant Johnson did make that statement, nothing suggests the statement was defamatory, falsely "depict[ed] the plaintiff as something or someone which he is not," "would be highly offensive to a reasonable person," or was meaningfully about Plaintiff at all.  *See Peabody Energy Corp. v. Strata Prods. Worldwide, LLC*, 917 S.E.2d 858, 862 (Ga. Ct. App. 2025) ("[A] defamatory statement

15

is one that injures the reputation of a person."); *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1356 (N.D. Ga. 2023) ("[T]he interest being protected in a false light case is that of reputation.").  Moreover, as Defendant Johnson points out in his briefing, his "allegations . . . filed in [state] court" were "[a]bsolutely privileged," meaning they "cannot form the basis for a defamation action" and "cannot be the subject of a claim for invasion of privacy." *Potts v. Richardson*, 918 S.E.2d 146, 151 (Ga. Ct. App. 2025); *Rothstein v. L.F. Still & Co.*, 351 S.E.2d 513, 515 (Ga. Ct. App. 1986); (*see* Dkt. 59-1 at 11).  The Court thus dismisses Plaintiff's claims for defamation and false light invasion of privacy.

## 2.    Abuse of Process

Plaintiff purports to assert a claim for "abuse of process" under Georgia common law.  (Dkt. 1 at 11; *see* Dkts. 74 at 8–9 (Plaintiff citing the common law definition of abuse of process); 59-1 (Defendant doing the same)).  But that cause of action no longer exists; the Georgia Supreme Court did away with it in 1986 and the Georgia legislature has since created a new statutory framework that is "the exclusive remedy for abusive litigation." *Yost v. Torok*, 344 S.E.2d 414, 417 (Ga. 1986) (creating "a single cause of action" that replaced "the common-law claims

16

of malicious abuse and malicious use [of process]"); O.C.G.A. § 51-7-85
(claims for "malicious abuse of civil process" and "malicious use of civil
proceedings" are no longer "allowed" because "[t]his article is the
exclusive remedy for abusive litigation"); *Coen v. Aptean, Inc.*, 838 S.E.2d
860, 864 & 868 n.17 (Ga. 2020) (*Yost* "redesigned" the "common-law torts
of malicious abuse and malicious use of legal process" into "a new tort,"
which later "was fully supplanted by the statutory abusive litigation
tort"). The Court thus dismisses Plaintiff's common law abuse of process
claim, though Plaintiff may amend his complaint to assert a statutory
abusive litigation claim if he believes doing so is warranted by the law
and the facts.[7]

---

[7] To the extent Plaintiff purports to assert a freestanding claim for an
"injunction prohibiting future conduct of a similar character" (Dkt. 1 at
14), the Court dismisses that claim because "injunctive relief is not a
stand-alone, independent cause of action." *Huck v. Philadelphia Consol.
Holding Corp.*, 2020 WL 4726753, at *7 (N.D. Ga. Mar. 19, 2020)
("Standalone counts for injunctive relief are improper."); *see Brown v.
Progressive Mountain Ins. Co.*, 2022 WL 18777475, at *8 (N.D. Ga. Aug.
15, 2022) ("[I]njunctive relief is not a standalone claim and is instead a
remedy for substantive legal claims."). To the extent Plaintiff purports
to assert a claim under Georgia's anti-SLAPP statute, O.C.G.A. § 9-11-
11.1, the Court dismisses that claim as well. The anti-SLAPP statute
allows defendants to file a motion to strike/dismiss in frivolous cases but
does not create a substantive cause of action on which a lawsuit may
independently proceed. *See Mauck v. Athens Pride, Inc.*, 922 S.E.2d 870,
876 (Ga. Ct. App. 2025); (Dkt. 1 at 15).

## II.    Defendant Manning's Motion[8]

Defendant Manning moves to dismiss Plaintiff's claims against her for failure to effectuate service of process.  (Dkt. 71-1 at 2–4.)  The Court grants Defendant's motion.

To serve an individual defendant in federal court, a plaintiff must (1) "deliver[] a copy of the summons and of the complaint to the individual personally"; (2) "leav[e] a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; (3) "deliver[] a copy of each to an agent authorized by appointment or by law to receive service of process"; or (4) "follow[] state law for serving [process]."  Fed. R. Civ. P. 4(e).  The state law rules for serving process in Georgia are "nearly identical" to the federal rules: plaintiff must (1) "deliver[] a copy of the summons attached to a copy of the complaint . . . to the defendant personally"; (2) "leav[e] copies thereof

---

[8] Although the caption in Plaintiff's complaint lists Defendant Manning "in her individual and official capacity," Plaintiff has since clarified he is suing Defendant Manning only in her individual capacity.  (*See* Dkt. 72 at 9 ("All of Plaintiff's substantive counts are directed at Manning's personal liability."), 14 ("Plaintiff brings suit under 42 U.S.C. § 1983 against Manning in her personal capacity"), 16 ("[T]his case involves individual liability."), 34 ("Plaintiff does not seek relief from the state in this action.").)

at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein"; or (3) "deliver[] a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process."  O.C.G.A. § 9-11-4(e)(7); *SPE GO Holdings, Inc. v. Anzo*, 2011 WL 13227984, at *2 (N.D. Ga. May 20, 2011).  Plaintiff must effectuate service under these rules "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  And where, as here, "defendant challenges service of process, plaintiff bears the burden of establishing its validity."  *Harris v. Fort Pierce Police Dep't*, 2023 WL 7153928, at *1 (11th Cir. Oct. 31, 2023).

Plaintiff does not claim he served Defendant Manning "personally" or left the summons and complaint at Defendant Manning's "dwelling" or "usual place of abode."  Instead, he claims he served Defendant's "agent" because he retained a private process server named Roosevelt Watt, Mr. Watt went to the Fulton County Law Office to serve Defendant on March 5, 2025 (two days after Plaintiff filed suit), Mr. Watt told "a clerk by the name of Jarvis Dukes in the office that [he] was there to serve Defendant," Mr. Dukes replied he "w[as] authorized to accept service," Mr. Watt handed Mr. Dukes "a copy of Plaintiff's Complaint," and

Mr. Dukes "accepted" the document.  (Dkt. 85-1 ¶¶ 3, 6–10; *see* Dkt. 85.)
But, in a sworn declaration, Defendant Manning insists she "ha[s] not
authorized anyone, including Mr. Dukes, to accept service of process on
[her] behalf."  (Dkt. 83-1 ¶ 6.)  Plaintiff's only contrary evidence is an
affidavit submitted by Mr. Watt, in which Mr. Watt recalls Mr. Dukes
saying he was "authorized to accept service."  (Dkt. 85-1 ¶¶ 9–10.)  This
hearsay account (a process server's description of what an alleged agent
told him) cannot defeat Defendant Manning's declaration (a direct
statement from the alleged principal).  *See Davis v. Peach Cnty. Bd. of
Commissioners*, 2025 WL 2664070, at *1 (M.D. Ga. Sept. 17, 2025) (where
process server claimed a clerk told him "she was authorized to accept
[defendant's] documents," but defendant denied the clerk had this
authority, defendant's testimony "govern[ed]"); *News-Press Pub. Co. v.
Kalle*, 326 S.E.2d 582, 583–84 (Ga. Ct. App. 1985) (defendant's affidavit
"den[ying] the existence of any . . . agency relationship" was "conclusive"
even though a process server claimed defendant's secretary "told [him]
she was authorized to accept service").  The Court thus accepts
Defendant's declaration and concludes Mr. Dukes was not authorized to
receive service for Defendant Manning.

Plaintiff does not really dispute this conclusion but claims service was nonetheless proper because Mr. Dukes had "*apparent* authority to accept service on [Defendant's] behalf." (Dkt. 85 at 3 (emphasis added).) The Court rejects this argument. "[A]gency for purpose of service of process cannot be created by apparent authority." *Clark v. L C Halsten LLC*, 2022 WL 22436417, at *2 (N.D. Ga. Sept. 7, 2022); *see Ecoview Am. LLC v. Elder*, 2021 WL 8134242, at *3 (S.D. Ala. Nov. 5, 2021) ("[F]ederal courts have consistently held that agency for purpose of service of process cannot be created by apparent authority."). Indeed, courts have repeatedly found service defective and rejected a plaintiff's reliance on apparent authority where, as here, the plaintiff served a third party who incorrectly told the process server he was an agent for the defendant. *See Odouk v. Saint Leon Univ., Inc.*, 2010 WL 11507607, at *11 (N.D. Ga. Mar. 10, 2010) ("[E]ven if . . . Dr. Walker told the process server that 'she, Dr. Walker, is authorized to receive papers on Matteson's behalf,' that alone would be insufficient as service of process on merely an apparent agent is not sufficient. It must be an actual agent."); *Robinson v. Peck*, 2014 WL 5857235, at *3 (N.D. Ga. Nov. 12, 2014) ("Someone who claims to have a relationship with a prospective defendant cannot agree to

accept service of process on behalf of a defendant. The determinative factor is whether the person who accepted service was the defendant's actual agent."); *Ross v. Preston*, 2008 WL 11334499, at *2–3 (N.D. Ga. Oct. 29, 2008) (service was defective even though "the process server asked the personal assistant of each Defendant whether she was authorized to receive a summons and complaint for the Defendant, and . . . in each case the person replied, 'Yes.'"). That Defendant Manning is subjectively aware of this lawsuit does not change the analysis. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("A defendant's actual notice is not sufficient to cure defectively executed service.").[9]

---

[9] Although Mr. Watt's affidavit suggests he delivered "a copy of Plaintiff's Complaint" to Mr. Dukes, it says nothing about the summons. (Dkt. 85-1 ¶ 6; *see* Dkt. 85-1 ¶ 10 (stating only that Mr. Dukes "accepted the pleadings")); *Young v. United Fruit & Produce Co.*, 2020 WL 5943020, at *5 (E.D. Mo. Oct. 7, 2020) ("A summons is not a pleading."). "Service of a copy of the complaint, without the requisite and properly issued summons, is insufficient process." *Davis v. JPMorgan Chase Bank, NA*, 2014 WL 12861415, at *10–11 (N.D. Ga. Apr. 10, 2014); *see Rufai v. Guided Therapeutics, Inc.*, 2019 WL 13275778, at *2 (N.D. Ga. Jan. 22, 2019) ("[A]ttempted service without a summons is ineffective."). Mr. Watt did submit a "proof of service" document last year in which he claimed he "served the summons on . . . Jarvis Dukes." (Dkt. 8-1.) But he left blank the name of the person for whom the summons was issued. (Dkt. 8-1.) And, as best the Court can tell, the handwritten name of the person for whom Mr. Dukes purportedly accepted service does not say "Alexander Manning" (though the spelling is close). (Dkt. 8-1.)

Plaintiff next argues, even if service was defective, Defendant Manning "waived any objection to personal jurisdiction or service" because she omitted that objection from her initial motion to dismiss, participated in a Rule 26(f) scheduling conference, and filed a Rule 26(f) joint preliminary report and discovery plan. (Dkt. 72 at 3–7.) The Court disagrees. Defendant Manning did not omit her service objection from her initial motion; she asserted it in a discrete portion of her brief under the heading, "The Court lacks jurisdiction over Judge Manning because Plaintiff has failed to properly serve her." (Dkt. 22-1 at 2.) Moreover, "defendants do not waive their right to contest personal jurisdiction [or defective service] by participating in the Scheduling Conference and filing of the 26(f) Report." *Special Quality Alloys, Inc. v. Coastal Mach. & Supply, Inc.*, 2023 WL 7412945, at *3 (S.D. Tex. Nov. 9, 2023); *see Dangerfield v. Mita Invs., Inc.*, 2024 WL 869473, at *4 (S.D.W. Va. Feb. 29, 2024) ("[P]articipating in a Rule 26(f) conference does not waive personal jurisdiction."). That is especially so here because Defendant Manning included in her Rule 26(f) report an "object[ion] to . . . insufficient service of process." (Dkt. 23-2 at 14 ("Judge Manning objects to personal jurisdiction on the grounds of lack of service or insufficient

service of process.")); *see Auto. Experts, LLC v. St. Charles Pontiac Inc.*, 2015 WL 846570, at *6 (E.D. La. Feb. 25, 2015) ("Mere participation in a scheduling conference will not suffice to waive a Rule 12(b) defense, particularly where the participating party indicates its intention to assert the defense at issue."). That Defendant Manning objected to service in her Rule 26(f) report distinguishes this case from other cases in which waiver applied. *See Demarco v. Rakmanov*, 2021 WL 8998911, at *4–5 (N.D. Ga. Aug. 13, 2021) (finding waiver where defendants "participated in a Rule 26(f) conference and joint preliminary report and discovery plan *without raising improper service*" (emphasis added)); *PNC Bank, Nat'l Ass'n v. Lewis Contracting Servs., LLC*, 2024 WL 4186008, at *3 (N.D. Ga. Aug. 9, 2024) (finding waiver where "the parties affirmed in their joint preliminary report and discovery plan that 'there is no question regarding this Court's jurisdiction', and then proceeded through discovery without issue"); *Poole v. Dhanraj Amrit, Jungle Trans, LLC*, 2018 WL 6380792, at *3–4 (N.D. Ga. Aug. 6, 2018) (finding waiver where defendants "engaged in six months of discovery on the merits" and "stated in the Joint Preliminary Report that there was no question regarding this Court's jurisdiction").

24

Finally, Plaintiff argues that, even if his service attempt was defective, the Court should let him "re-serve [Defendant] Manning properly"—rather than "dismiss the case outright"—because "any technical defect . . . could be easily cured." (Dkt. 72 at 6.)  This conditional request is "not properly before the district court" because it appears in a response brief rather than a motion.  *Vento v. Patel*, 2024 WL 775142, at *4 (11th Cir. Feb. 26, 2024) ("[R]equest[s] for an extension of time to serve . . . . must be made by motion.").  But the Court nonetheless considers whether an extension is warranted under Rule 4(m).  That rule says "the court must extend the time for service" if "plaintiff shows good cause" for failing to serve defendant "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m).  "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007).  If "plaintiff fails to show good cause for failing to effect timely service," the court "must still consider whether any other circumstances warrant an extension of time based on the facts of the case." *Id.* at 1282.  "[R]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the

defendant is evading service or conceals a defect in attempted service."
*Id.* If Plaintiff does not establish good cause and an extension is otherwise unwarranted, the Court "must dismiss the action without prejudice." Fed. R. Civ. P. 4(m).

Plaintiff has not shown good cause for an extension here and the Court does not believe the facts otherwise warrant an extension. To be sure, Plaintiff is "acting pro se," "may have mistakenly relied upon the unsupported hearsay of [Mr. Dukes] that [Mr. Dukes] was [Defendant's] authorized agent," "may have mistakenly believed [his] interpretation of the Rules and the law regarding service of process in Georgia was correct," and likely cannot reassert his claims in a new action because the statute of limitations governing those claims has now expired. *Holmes v. Georgia*, 2010 WL 11469662, at *5–6 (M.D. Ga. Mar. 5, 2010) (declining to grant a service extension despite these factors). But Plaintiff's pro se status and misunderstanding of the law does not excuse defective service;[10] Defendant warned Plaintiff back in March 2025—during the

---

[10] *See Ryzhov v. Fla.*, 861 F. App'x 301, 304 (11th Cir. 2021) ("Plaintiff's pro se status and misunderstanding of the procedural rules alone are insufficient to establish good cause" under Rule 4(m)); *Anderson v. Osh Kosh B'Gosh*, 255 F. App'x 345, 348 n.4 (11th Cir. 2006) ("[A party's]

first month of this suit—that Plaintiff's service attempt was "improper" (Dkt. 22-1 at 2–3); Defendant further explained Mr. Dukes was not "authorized by appointment or law to receive service" on her behalf (Dkt. 22-1 at 2–3); Defendant has repeated these assertions throughout this litigation (Dkts. 44-1 at 1–2; 71 at 2–4; 77 at 2–3; 83); and, though we are now a year into the case, Plaintiff has never tried to cure his defective service, moved for additional time to do so, sought to establish "good cause" under Rule 4(m), or meaningfully argued an extension is otherwise warranted under *Lepone-Dempsey*. Weighing these considerations, and viewing the record in its totality, the Court declines to grant an extension under Rule 4(m) and instead dismisses Defendant Manning without prejudice for insufficient service of process. *See Holmes*, 2010 WL 11469662, at *5–6 (reaching the same conclusion on similar facts); *Cooley v. Ocwen Loan Servicing, LLC*, 729 F. App'x 677, 682 (11th Cir. 2018) (affirming dismissal for insufficient service in a pro se case because, even though defendant "filed [a] motion to dismiss" putting plaintiff on "notice that he had not properly effectuated service,"

---

pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules.").

plaintiff "still did not serve [defendant] and does not allege that he tried at all over the next six months"); *Anderson*, 255 F. App'x at 348 (affirming dismissal for insufficient service where pro se plaintiff "neither requested an extension of time to complete service, nor explained why 'good cause' excused her failure").[11]  That "the applicable statute of limitations would [likely] bar [a] refiled action" does not require a different result.  *Lepone-Dempsey*, 476 F.3d at 1282; s*ee Vento*, 2024 WL 775142, at *3 ("As long as the district court considers the statute of limitations, the expiration of the statute of limitations does not require that the district court extend time for service of process under Rule 4(m).").

## III.  Conclusion

The Court **GRANTS** Defendant Johnson's Rule 12(i) motion to dismiss for failure to state a claim (Dkt. 59).  If Plaintiff believes in good

---

[11] *See also Thompson v. U.S. Dep't of Homeland Sec.*, 134 F. App'x 420, 422 (11th Cir. 2005) (pro se plaintiff did not establish good cause under Rule 4(m) because, even if "guidance provided by the district court's clerk's office" was "insufficien[t]," she "had 188 days to perfect service" and thus her failure to do so suggested "negligence"); *Vento*, 2024 WL 775142, at *3 (dismissal for insufficient service of process was warranted because "more than seven months lapsed [after defendants] made [plaintiff] aware of the need to serve Patel" and "the docket is devoid of any motion for extension of time or any other indication that [plaintiff] tried to serve Patel in the interim").

faith that he can cure the deficiencies identified in this Order and that his claims are otherwise supported by the law and the facts, he may file—within the next 30 days—an amended complaint that both reasserts his federal claims against Defendant Johnson and asserts a statutory abusive litigation claim against Defendant Johnson under state law. Plaintiff's amended complaint may not assert any other claims, including claims for defamation, invasion of privacy, or abuse of process (or claims against Defendant Manning). The Court is allowing Plaintiff to amend a subset of his claims against Defendant Johnson because Plaintiff is representing himself in this litigation, he has not yet filed an amended complaint, and Defendant Johnson has not shown the specific amendments authorized by this Order would be an exercise in futility. *See Sifford v. Ford*, 701 F. App'x 794, 796 (11th Cir. 2017) ("Generally, a district court must sua sponte provide a pro se plaintiff at least one opportunity to amend his complaint, even where the plaintiff did not request leave to amend.").[12]    If Plaintiff does not file an amended

---

[12] To be clear, the Court has its own doubts—grave doubts—about the viability of any of Plaintiff's claims, especially his federal claims. But, *looking only at the limited arguments for dismissal presented in Defendant Johnson's briefing*, Defendant Johnson has not shown amendment would be futile.

complaint within the next 30 days—or if he does but the complaint is deficient for any reason—the Court will dismiss Plaintiff's claims against Defendant Johnson with prejudice and close the case.

The Court **GRANTS** Defendant Manning's motion to dismiss for failure to effectuate service of process (Dkt. 71) and **DISMISSES** Defendant Manning from this case **WITHOUT PREJUDICE**.

The Court **DENIES** Plaintiff's motion for reconsideration of the Court's Order declining to enter default against Defendant Manning (Dkt. 73). The Court **DENIES** Plaintiff's motion to file a sur-reply in opposition to Defendant Manning's motion to dismiss (Dkt. 79). The Court **GRANTS** Plaintiff's motion to file a "sur-reply" in support of his motion for reconsideration (Dkt. 80). The Court **GRANTS** Plaintiff's motion to exceed the page limit applicable to his supplemental brief (Dkt. 84).

**SO ORDERED** this 6th day of February, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE